IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES THOMPSON, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:19-CR-00378-ELR-CMS-2 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:23-CV-01445-ELR |

## FINAL REPORT AND RECOMMENDATION

Movant James Thompson, confined at United States Penitentiary Leavenworth in Leavenworth, Kansas, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 161). Respondent filed a response. (Doc. 170).

For the reasons stated below, it is **RECOMMENDED** that the instant motion to vacate (Doc. 161) be **DENIED**.

## I. BACKGROUND

In 2019, Movant was indicted on conspiracy to commit mail and wire fraud and numerous counts of mail fraud. (Doc. 1). These charges stemmed from a series of fraudulent transactions made by Movant and his wife involving false invoices. In 2021, a superseding indictment charged Movant with conspiracy to commit mail fraud, mail fraud, and money laundering. (Doc. 88). In January 2022, Movant, pursuant to a plea agreement, pleaded guilty to one count of mail fraud (Count 13),

in violation of 18 U.S.C. § 1341. (Doc. 103-1 at 1). The Government subsequently discovered that Movant and his wife had a secret bank account used to conceal assets from the Government. (PSR at 23–24; Doc. 135 at 44–49). In April 2022, the Court sentenced Movant to 80 months of imprisonment. (Doc. 118). Movant did not file a direct appeal.

In 2023, Movant filed the instant § 2255 motion. (Doc. 161). In his motion, Movant raises the following claims:

(1) Movant received ineffective assistance of counsel when counsel failed to inform him of the consequences of his plea;

(2) Movant received ineffective assistance of counsel when counsel failed to object to relevant conduct at sentencing; and

(3) Movant received ineffective assistance of counsel when counsel failed to discuss the possibility of an appeal.

(*Id.* at 4–8).

## II. DISCUSSION

### A. Claim 1

To prevail on a claim of ineffective assistance of counsel, a prisoner must meet a two-part test established by *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that "counsel's performance was deficient." *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019). Counsel's performance is deficient only if it falls "below an objective standard of reasonableness." *Id.* (internal quotation marks omitted). "There is a strong presumption that counsel's conduct

fell within the range of reasonable professional assistance, and, therefore, counsel's performance is deficient only if it falls below the wide range of competence demanded of lawyers in criminal cases." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). Second, a prisoner must show that he suffered prejudice as a result of counsel's deficient performance. *Id.* To establish prejudice, a prisoner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). A court need not address both prongs if a prisoner makes an insufficient showing on one. *Id.*

    1.    Claim 1

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is voluntary and intelligent." (internal quotation marks omitted)). Nevertheless, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." *Id.* at 186.

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not

3

> correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady v. United States*, 397 U.S. 742, 757 (1970).

In Claim 1, Movant argues that he received ineffective assistance of counsel when counsel failed to inform him of the consequences of his plea. (Doc. 161 at 4). In particular, he contends that counsel stated that it was not worth going to trial, and counsel told him that if he pleaded guilty, he would be sentenced to only 12–36 months of imprisonment. (*Id.* at 4). Movant claims that he was coerced into signing the plea agreement. (*Id.*). He also claims that he was shocked when the Court sentenced him to a much longer sentence, and had he known otherwise, he would not have agreed to plea guilty. (*Id.*). However, Movant's assertions are belied by the record.

At Movant's plea hearing, Movant verified that he had signed a plea agreement. (Doc. 134 at 7–8). The plea agreement provided the statutory maximum penalty of 20 years and stated that "the Court may impose a sentence up to and including the statutory maximum as set forth in the above paragraph and that no one can predict his exact sentence at this time." (Doc. 103-1 at 3). Movant also acknowledged in the plea agreement that "[n]o one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those

4

discussed in the Plea Agreement." (*Id.* at 14). In addition, at the plea hearing, Movant stated under oath that nobody forced him to plead guilty, and he was entering his plea freely and voluntarily. (Doc. 134 at 6–7). Furthermore, Movant confirmed that nobody promised him any particular sentence, and the Court stated that even it would not know exactly what sentence would be imposed. (*Id.* at 16–17).

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Because Movant "made statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (internal quotation marks omitted). Movant has failed to meet his burden here, as his assertions to the contrary in his § 2255 motion are insufficient to rebut the presumption of verity accorded to his statements made during his plea colloquy. *See id.* ("The district court is entitled to discredit a defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements."). Accordingly, Movant has not shown prejudice, and counsel was not ineffective.[1] *See Khan*, 928 F.3d at 1272. Thus, Movant is not entitled to relief as to this claim.

---

[1] In addition, at least some portion of Movant's elevated sentence was due to his misconduct following his guilty plea with regard to the concealment of assets

2.   Claim 2

In Claim 2, Movant argues that he received ineffective assistance of counsel when counsel failed to object to relevant conduct at sentencing. (Doc. 161 at 5–6). He claims that counsel "demonstrated a complete lack of familiarity with the Guidelines" and that counsel "did not file any written objection" to relevant conduct. (*Id.* at 5).

However, Movant's claim is contradicted by the record. In particular, counsel objected to numerous applications of the Guidelines, including the loss amount, the application of a sophisticated means enhancement, the failure to apply a reduction for Movant's minor role in the offense, the scoring of Movant's criminal history, the application of an obstruction of justice enhancement, and the failure to apply a reduction for acceptance of responsibility, and counsel argued these points at the sentencing hearing. (PSR at 19–23; Doc. 135 at 20–23, 64–76). Counsel ultimately withdrew his objection to the loss amount at sentencing "for strategic reasons." (Doc. 135 at 68). The Government presented very strong evidence that the entire loss amount was attributable to Movant. (Doc. 112 at 1–11). As a result, it was reasonable for counsel to decide not to fight the loss amount and instead to withdraw

---

from the Government. (*See* PSR at 23–30; Doc. 135 at 99–100). Counsel plainly cannot be ineffective with regard to Movant's guilty plea for events that occurred after the plea was entered.

that objection as "further evidence of [Movant's] contrition" in a bid to convince the Court to grant Movant a reduction for acceptance of responsibility. (Doc. 135 at 68). This is a quintessential tactical decision that is not subject to second guessing. *See Khan*, 928 F.3d at 1272; *see also Strickland*, 466 U.S. at 690 (explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Ultimately, "counsel will not be deemed unconstitutionally deficient because of tactical decisions." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (brackets and internal quotation marks omitted). Here, in making a sound tactical decision, counsel did not act deficiently and consequently was not ineffective. *See Khan*, 928 F.3d at 1272.

In any event, aside from a conclusory assertion that "the outcome at sentencing would have been different," (Doc. 161 at 6), Movant does not explain how he was prejudiced by counsel's failure to further pursue the objection to the loss amount, and the Court will not guess at arguments to raise on Movant's behalf. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him."); *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (cautioning that although pro se litigants are afforded liberal construction of their pleadings, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading

in order to sustain an action" (internal quotation marks omitted)); *see also Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (reiterating that "a § 2255 movant bears the burden to prove the claims in his § 2255 motion" (internal quotation marks omitted)).  Thus, because Movant has shown neither deficient performance nor prejudice, he is not entitled to relief on this claim.

      3.    *Claim 3*

Under Supreme Court precedent, there is no per se rule that counsel must always consult with a defendant regarding an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  Instead,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480.

In Claim 3, Movant argues that he received ineffective assistance of counsel when counsel failed to discuss the possibility of an appeal.  (Doc. 161 at 6–8).  He contends that counsel "did not discuss any possibility of an appeal" on the day of sentencing and that had he consulted with Movant after sentencing, he would have known that Movant sought to appeal given that a rational defendant would have appealed in Movant's situation.  (*Id.* at 7, 8).

However, Movant has failed to show that counsel was ineffective. Movant's plea agreement contained a broad appeal waiver that prohibited appealing except for claims of ineffective assistance of counsel and claims involving an upward departure or variance above the Sentencing Guidelines range established by the Court. (Doc. 103-1 at 12). Given that Movant received a within-Guidelines sentence, (*see* Doc. 135 at 100, 133), there is no nonfrivolous basis for an appeal. *See Flores-Ortega*, 528 U.S. at 480. Furthermore, there is no reasonable indication that Movant was interested in appealing, especially in light of the fact that Movant agreed to waive nearly all of his appellate rights. As result, counsel did not act deficiently. *See Khan*, 928 F.3d at 1272. Nor has Movant shown prejudice given that he was notified of his appeal waiver both at his plea hearing and at his sentencing hearing, and the Court thoroughly discussed the appeal waiver with Movant. *See Osley*, 751 F.3d at 1222; (Doc. 134 at 11, 19–20; Doc. 135 at 75–76, 137–39). Consequently, counsel was not ineffective, and Movant is not entitled to relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (citing *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

It is **RECOMMENDED** that a certificate of appealability be **DENIED** because resolution of the issues presented is not debatable. If the District Judge adopts this recommendation and denies a certificate of appealability, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## IV. Conclusion

For the reasons stated above, it is **RECOMMENDED** that the instant motion to vacate (Doc. 161) be **DENIED** and a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**SO RECOMMENDED**, this 2nd day of August, 2024.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE